1   Robert E. Johnston (admitted *pro hac vice*)
    rjohnston@hollingsworthllp.com
2   Andrew L. Reissaus (admitted *pro hac vice*)
    areissaus@hollingsworthllp.com
3   Hollingsworth LLP
    1350 I Street, NW
4   Washington, DC  20005
    Telephone:  (202) 898-5800
5   Facsimile:  (202) 682-1639

6   James A. Bruen (State Bar No. 43880)
    jbruen@fbm.com
7   Sandra A. Edwards (State Bar No. 154578)
    sedwards@fbm.com
8   Farella Braun + Martel LLP
    235 Montgomery Street, 17th Floor
9   San Francisco, CA  94104
    Telephone:  (415) 954-4400
10  Facsimile:  (415) 954-4480

11  *Attorneys for Defendant Novartis*
    *Pharmaceuticals Corporation*

12

13                UNITED STATES DISTRICT COURT

14              EASTERN DISTRICT OF CALIFORNIA

15

16  Kristi Lauris, Individually and as Successor     Case No. 1:16-cv-00393-SEH
    In Interest to the Estate of Dainis Lauris;
17  Kristi Lauris as Guardian ad Litem for           **NOVARTIS PHARMACEUTICALS**
    L.L.; and Taylor Lauris,                         **CORPORATION'S MEMORANDUM OF**
18                                                   **LAW IN SUPPORT OF MOTION *IN***
                    Plaintiffs,                      ***LIMINE* NO. 1 TO EXCLUDE EVIDENCE**
19                                                   **AND ARGUMENT ABOUT LABELING**
            vs.                                      **ISSUES CONTROLLED BY THE FDA____**
20
    Novartis AG, a Global Healthcare                 Hon. Sam E. Haddon
21  Company; Novartis Pharmaceuticals
    Corporation, a Delaware Corporation,             Trial Date:  January 23, 2018
22
                    Defendants.
23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
PREEMPTED LABELING ARGUMENTS -  Case No.
1:16-cv-00393-SEH

Novartis Pharmaceuticals Corporation ("NPC") respectfully requests that the Court exclude – as preempted by federal law – evidence and argument that NPC should have taken certain Food & Drug Administration ("FDA")-controlled actions.  Specifically, plaintiffs' expert, Dr. Blume, argues in her report that NPC should have included a warning about atherosclerotic events in the Warnings & Precautions section (section 5) of the Tasigna® labeling by 2011, should have added a boxed warning by 2012 and sent Dear Healthcare Provider letters ("DHCP letters") with each change.  *See, e.g.*, Blume Report (Doc. No. 112-4) at ¶ 10.  Dr. Hoffmann has testified that he might have changed his prescribing decision if a boxed warning and/or DHCP letter had been part of the Tasigna® labeling.  *See* Declaration of Robert E. Johnston in Support of NPC's Motions *In Limine* ("Johnston Decl."), ¶ 2, Ex. 1 (Mar. 10, 2017 Hoffmann Deposition Transcript at 173:10-177:3 and 265:24-266:24).[1]  But such arguments are preempted by federal law and should be precluded from evidence at trial.

I.      **The Court Should Preclude Plaintiffs From Offering Testimony Or Argument About The Location Of NPC's Atherosclerotic Events Warning In The Tasigna® Label.**

FDA comprehensively regulates the formatting of prescription drug labeling.  *See, e.g.*, 21 C.F.R. § 201.57(d) (setting forth formatting requirements for drug labels).  The FDA's authority on that subject is plenary, as established by the Ninth Circuit's ruling in *Pom Wonderful*, rejecting a plaintiff's claims that the FDA-approved label should have been formatted differently.  *See Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1178 (9th Cir. 2012), *rev'd*, 134 S. Ct. 2228 (2014).  In affirming dismissal of the plaintiff's claims, the Ninth Circuit relied on FDA's primary jurisdiction over labeling decisions and 21 U.S.C. § 337(a), which requires that all "proceedings for the enforcement, or to restrain violations, of [FDA's regulations] shall be by and in the name of the United States."  *Id.*[2]

---

[1] These changes were made pursuant to Canadian regulations, which differ from U.S. regulations in relevant ways.  *See* argument in NPC's concurrently filed Motion *In Limine* No. 2 to Exclude Foreign Regulatory Evidence.

[2] Section 337(a) has been applied to restrict plaintiffs' claims in numerous contexts, including to preclude certain state law products liability claims.  *See, e.g.*, *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1205 (8th Cir. 2010) (state law failure-to-warn claim barred by § 337(a) to the extent that plaintiffs alleged defendant "failed to provide the FDA with sufficient information and did not timely file adverse event reports, as required by federal

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

33022\6169899.2                                                                    - 1 -                    **NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE PREEMPTED LABELING ARGUMENTS - Case No. 1:16-cv-00393-SEH**

1       The Ninth Circuit concluded that the relevant precedent "teaches that courts must

2  generally prevent private parties from undermining, through private litigation, the FDA's

3  considered judgments." *Id.*  On this rationale, the court ruled that the plaintiff's claim that

4  defendant should have "alter[ed] the size of the words on its labeling" invaded the province of the

5  FDA and would "undermine the FDA's regulations and expert judgments." *Id.* at 1177.  The

6  court reasoned that "Congress and the FDA have . . . considered and spoken to what content a

7  label must bear, and the relative sizes in which the label must bear it, so as not to deceive[,]" and

8  "[i]f the FDA believes that more should be done to prevent deception, or that [defendant's] label

9  misleads consumers, it can act." *Id.* at 1177.  The court thus held, "we must respect the FDA's

10  apparent decision not to impose the requirements urged by [plaintiff][,]" and "we must keep in

11  mind that we lack the FDA's expertise in guarding against deception in the context of . . .

12  labeling." *Id.* at 1178.  As the court stated, "the appropriate forum for [plaintiff's] complaints is

13  the [FDA]." *Id.* (quotation marks and citation omitted).

14       A court in this district has applied *Pom Wonderful* and preempted evidence in a

15  pharmaceutical product liability case similar to this one.  In *Hill v. Novartis Pharmaceuticals*

16  *Corp.*, the Eastern District of California excluded all evidence and argument concerning the

17  formatting of warnings in a pharmaceutical label.  944 F. Supp. 2d 943, 956-58 (E.D. Ca. 2013).

18  Citing to *Pom Wonderful*, the court in *Hill* held that plaintiff should be barred from arguing that

19  "the warning [should have been] in a different section of the label, or should have utilized a

20  different font size or bolded text . . . [because] FDA regulations for prescription drug labeling

21  extend not only to content but to formatting." *Id.* at 957.  The *Hill* court concluded that "the

22  Court's research reveals no authority [] to suggest manufacturers may [modify] the label's

23

24

---

25  regulations"); *PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997)
("Friedlander's dogged insistence that PDK's products are sold without proper FDA approval

26  suggests . . . that Friedlander's true goal is to privately enforce alleged violations of the FDCA.
However, no such private right of action exists.  *See* 21 U.S.C. § 337(a)." (citation omitted)); *see*

27  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4, 352 (2001) (discussing
§ 337(a)); *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) (applying § 337(a) to

28  preclude plaintiff's claims).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

33022\6169899.2          - 2 -           **NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
PREEMPTED LABELING ARGUMENTS -  Case No.
1:16-cv-00393-SEH**

formatting [without FDA approval][,]" and it thus precluded the plaintiff "from arguing that the []
label should have been formatted differently." *Id.* The same result should apply here.

Moreover, FDA's active involvement in the Tasigna® labeling updates demonstrates that
FDA would not have allowed a Warning & Precaution for atherosclerosis at an earlier time.
Since 2007, FDA has had the power to require labeling changes for Tasigna® at any time should it
determine changes to be appropriate. Johnston Decl., ¶ 3, Ex. 2 (21 U.S.C. 355(o)(4) ("If the
Secretary becomes aware of new safety information that the Secretary believes should be
included in the labeling of the drug, the Secretary shall promptly notify the responsible person"));
Johnston Decl., ¶ 4, Ex. 3 (Guidance on Implications of FDCA 505(o)(4)) ("Section 505(o)(4)
authorizes FDA to require certain drug and biological product application holders to make safety-
related labeling changes based on new safety information that becomes available after approval of
the drug or biological product.")); Johnston Decl. ¶ 5, Ex. 4 (July 31, 2017 Blume Deposition
Transcript ("Blume Dep. Tr.") at 288:2-289:6). That it did not require such a change despite its
active involvement in Tasigna® labeling updates is an additional ground for preemption under the
Supreme Court's ruling in *Wyeth v. Levine*, 555 U.S. 555, 571 (2009) (suggesting that "clear
evidence that the FDA would not have approved a change to [the] label" is sufficient for
impossibility preemption). The clear evidence shows that FDA considered the data related to
atherosclerotic events carefully over many years, beginning in 2011 when FDA prepared a
memorandum addressing reports of PAOD in patients who had received Tasigna®. Johnston
Decl., ¶ 6, Ex. 5 (2011 FDA Memorandum). In that year, FDA agreed with placement of PAOD
in the adverse events section of the label and precluded NPC from adding PAOD to the
medication guide at that time. Johnston Decl., ¶ 7, Ex. 6 (FDA Feedback to Tasigna October 13,
2011, atTPROD02730410)). FDA continued to receive newly available information, such as
NPC's regular submissions of adverse events and safety update reports. Johnston Decl. ¶ 5, Ex. 4
(Blume Dep. Tr. at 194:4-11).[3] NPC advised FDA that Canadian regulators had required a

---

[3] *See, e.g.*, Johnston Decl. ¶ 8, Ex. 7 (Efficacy Supplement Clinical Interim Report from March 2,
2012 (TREDI00718676 to TREDI00718677)).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

33022\6169899.2                                        - 3 -                    NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
PREEMPTED LABELING ARGUMENTS - Case No.
1:16-cv-00393-SEH

warning and precaution and DHCP letter in 2012 and 2013,[4] but FDA did not request an addition to the Warnings & Precautions section prior to NPC adding one in the fall of 2013,[5] and FDA at no time requested a U.S. DHCP letter.[6]  This clear evidence of FDA's active evaluation of the available data regarding Tasigna® and reports of atherosclerotic events preempts any argument that FDA's approved warnings were inadequate at the time of their approval.  *See In re Incretin-Based Therapies Prods. Liab. Litig.*, 142 F. Supp. 3d 1108, 1121, 1124 (S.D. Cal. 2015) (where FDA had "actively investigated the existence of a causal relationship" for "several years," FDA's "substantial review of the issue posed by Plaintiffs' claims" and subsequent failure to require a label change was "persuasive" evidence that "FDA would have rejected" the label change sought by plaintiffs); *Cerveny v. Aventis, Inc.*, 155 F. Supp. 3d 1203, 1219 (D. Utah 2016), *aff'd in part, rev'd in part,* 855 F.3d 1091 (10th Cir. 2017) (finding "FDA's inaction, coupled with the FDA's comprehensive review of any association between [the prescribed drug and the injury], to be highly persuasive evidence that the FDA would not permit [the manufacturer] to strengthen [the medication's] labeling as the Plaintiffs suggest"); *Rheinfrank v. Abbott Labs., Inc.*, 119 F. Supp. 3d 749, 766 (S.D. Ohio), *reconsideration denied*, 137 F. Supp. 3d 1035 (S.D. Ohio 2015), *and aff'd*, 680 F. App'x 369 (6th Cir. 2017) (failure to warn claim is preempted where there was clear evidence the FDA would not have approved a change to the warning of the prescription drug label); *id.* at 768 ("Testimony about what Abbott could have and should have researched or stated to the FDA in its applications is speculative, and does not serve as the basis for a genuine issue of material fact.").

## II. The Court Should Preclude Plaintiffs From Offering Testimony Or Argument That NPC Should Have Added A Boxed Warning Regarding Atherosclerotic Events To The Tasigna® Label.

Plaintiffs' expert, Dr. Blume, opines that NPC should have added a boxed warning to the Tasigna® label by 2012.  Blume Report at ¶ 10.  A boxed warning (sometimes called a "black box" warning) is the strictest warning put in the labeling of prescription drugs or drug products by

---

[4] Johnston Decl., ¶ 9, Ex. 8 (Excerpt from PSUR 8 from March 29, 2013 (TREDI00868518 to 519).

[5] Johnston Decl., ¶ 10, Ex. 9 (January 2014 Tasigna® Label).

[6] See further discussion of DHCP letters in section III, *infra*.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

33022\6169899.2                    - 4 -          NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
PREEMPTED LABELING ARGUMENTS -  Case No.
1:16-cv-00393-SEH

the FDA.  Dr. Blume acknowledges that a boxed warning may not be added to a label without prior FDA approval.[7]  Johnston Decl. ¶ 5, Ex. 4 (Blume Dep. Tr. at 283:11-19)

The Court should preclude evidence or argument that a boxed warning for atherosclerotic events should have been added to the Tasigna label® where such an argument is preempted under the rationale of the Supreme Court's *PLIVA, Inc. v. Mensing* decision.[8]  564 U.S. 604 (2011).  In *Mensing*, the Supreme Court considered the doctrine of implied preemption as it applies to drug manufacturers facing state law failure-to-warn claims.  While the Court's specific ruling was directed at claims brought against generic drug manufacturers, its holding turned on the ability (or lack thereof) of drug manufacturers to make certain labeling changes without prior FDA approval.  The Court held that state law failure-to-warn claims against generic pharmaceutical manufacturers are preempted because it is impossible for such manufacturers "to comply with both their state-law duty to change the label and their federal duty to keep the label the same" as that of their name-brand counterparts.  *Id.* at 618.  The Court determined that the mere possibility that stronger warnings might result from such a procedure does not eliminate the conflict between state and federal law.  "The question for 'impossibility,'" the Court emphasized, "is whether the private party could *independently* do under federal law what state law requires of it."  *Id.* at 620 (emphasis added).  The Court further concluded that "when a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes."  *Id.* at 623-24.  The *Mensing* Court's reasoning is equally

---

[7] The Boxed Warning section of a label is governed by 21 CFR § 201.57(a)(4) (setting forth the specific requirements on content and format of labeling for prescription drugs).  Changes to this section of the labeling are discussed in 21 C.F.R. § 314.70(b)(2)(v)(C) (supplements and other changes to an approved NDA), which requires "supplement submission and approval prior to distribution of the product using the change . . . ."  *See* 21 C.F.R. § 314.70(b).

[8] *Levine* is not to the contrary.  In *Levine*, the Supreme Court ruled that a plaintiff's failure-to-warn claim was not preempted because the manufacturer in that case could have unilaterally strengthened its label in the manner suggested by the plaintiff without prior FDA approval.  555 U.S. at 582-83.  That is not the case here, where plaintiffs' regulatory expert even admits that all the changes plaintiffs request – additions to the highlights section and (Warnings & Precautions and boxed warnings) or the issuance of a DHCP letter cannot be made unilaterally.  *See* Johnston Decl. ¶ 5, Ex. 4 (Blume Dep. Tr. at 282:25-283:6; 283:11-19).

applicable to potential labeling changes by name-brand pharmaceutical manufacturers which are not permitted under the Changes Being Effected ("CBE") regulations and which require prior FDA approval.  As explained below, the additions of a boxed warning to the Tasigna® label falls squarely within this category.

A boxed warning is considered part of the "highlights" section of the warning, and items within it can only be drawn from the Warnings & Precautions section of the label (section 5).[9] See 21 C.F.R. § 201.57(c)(1) ("Certain contraindications or serious warnings, particularly those that may lead to death or serious injury, may be required by the FDA to be presented in a box.").  Changes to the highlights section of a label require prior approval by the FDA.  See 21 C.F.R. §§ 314.70 and 601.12.

The FDA emphasized the prior approval requirement thirty years ago in response to public rulemaking comments that asked if a manufacturer could institute a boxed warning without prior FDA approval.  FDA's answer unequivocally confirmed that a manufacturer could not do so:

> A comment asked whether a manufacturer may include a boxed warning without prior FDA approval and whether FDA would consider the labeler's desires when specifying the location of boxed warnings in labeling.  The Commissioner advises that, to ensure the significance of boxed warnings in drug labeling, they are permitted in labeling only when specifically required by the FDA.

44 Fed. Reg. 37434, 37448 (June 26, 1979).  This has been FDA's approach ever since.  FDA explained that it has retained exclusive control over the decision as to whether and when a boxed warning may be added because "[t]he intent of the box is to draw special attention to the warning" and it exercises "restraint in requiring warnings to be boxed because overuse of the box will ultimately lead to reducing its effect."  51 Fed. Reg. 43900-01, 43902 (Dec. 5, 1986); see also Johnston Decl. ¶ 11, Ex. 10 (April 2, 2012 Trial Tr., Winter v. Novartis Pharm. Corp., No. 2:06-cv-04049, at 1768 (W.D. Mo.)) ("FDA has made it very clear that they use black box warnings very carefully.  They don't want to overuse black box warnings because then people don't notice them at all.").  The FDA's consistently expressed position that a manufacturer cannot

---

[9] A warning can only go in the Warnings & Precautions section (section 5) if there is reasonable evidence of an association of a serious hazard with the drug.  21 C.F.R. § 201.57(c)(6).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

33022\6169899.2        - 6 -        NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
PREEMPTED LABELING ARGUMENTS - Case No.
1:16-cv-00393-SEH

1    unilaterally add a black box warning controls here. *See Mensing*, 564 U.S. at 613 ("The FDA's

2    views are controlling unless plainly erroneous or inconsistent with the regulation[s] or there is

3    any other reason to doubt that they reflect the FDA's fair and considered judgment.") (quotation

4    marks omitted).

5         The only unilateral action NPC could have taken in this case was to *propose* to the FDA

6    that it require a boxed warning. As *Mensing* makes clear, however, a manufacturer's ability to

7    *propose* that the FDA take an action that a manufacturer cannot independently accomplish does

8    not make it possible for the manufacturer to comply with both state and federal law. "[P]re-

9    emption analysis should not involve speculation about ways in which federal agency and third-

10   party actions could potentially reconcile federal duties with conflicting state duties. When the

11   'ordinary meaning' of federal law blocks a private party from independently accomplishing what

12   state law requires, that party has established pre-emption." *Id.* at 623. Thus, any claim that NPC

13   should have included a boxed warning in the Tasigna® prescribing information is preempted.

14        Finally, the fact that FDA has never required a boxed warning for atherosclerotic events in

15   the U.S. is clear evidence that FDA would not have approved a boxed warning had NPC

16   requested it. In the instant case, the FDA had received Adverse Event Reports and clinical trial

17   results and was actively involved in providing revisions to proposed label updates for Tasigna®

18   each year. In September 2013, NPC requested a meeting with FDA to discuss cardiovascular

19   adverse events occurring in patients receiving Tasigna®. Johnston Decl., ¶ 12, Ex. 11 (Sept. 27,

20   2013 Type C Meeting Request, TREDI01221734). After accepting that meeting request, FDA

21   provided a redline for updated prescribing information for Tasigna® that included proposing an

22   addition to the Warnings & Precautions section redline label comments. Importantly, FDA's

23   proposal did not request a boxed warning. Johnston Decl., ¶ 13, Ex. 12 Oct. 25, 2013 FDA e-

24   mail (TREDI00876631 to 876659, at 876637)). After a review of available data in 2013, FDA

25   prepared a Postmarket Safety Summary for Tasigna®. In that document, FDA did not recommend

26   any new boxed warning. *See* Johnston Decl., ¶ 14, Ex. 13 (FDA Post-Market Safety Summary

27   from December 2013 (LAURIS-00005584)). By contrast, contemporaneous to FDA's review of

28   Tasigna®'s prescribing information, FDA required a new boxed warning regarding cardiovascular

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

33022\6169899.2                     - 7 -                     NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
                                                             PREEMPTED LABELING ARGUMENTS - Case No.
                                                             1:16-cv-00393-SEH

events for another TKI (tyrosine kinase inhibitor), Iclusig® (ponatinib).  *See* Johnston Decl., ¶ 15,

Ex. 14 (FDA Drug Safety Communication: FDA requires multiple new safety measures for

leukemia drug Iclusig; company expected to resume marketing (*available at*

https://www.fda.gov/Drugs/DrugSafety/ucm379554.htm)).  Given the contemporaneous review

by FDA of Tasigna®'s safety data, it is especially notable that FDA did not require or recommend

a boxed warning for Tasigna® when it did for Iclusig®.  This clear evidence is an additional

ground for preemption under the Supreme Court's ruling in *Levine*, 555 U.S. at 571 (suggesting

that "clear evidence that the FDA would not have approved a change to [the] label" is sufficient

for impossibility preemption).  *See also Dobbs v. Wyeth Pharm.*, 797 F. Supp. 2d 1264, 1276-77

(W.D. Okla. 2011) (preemption warranted where there was clear evidence the FDA would not

have approved a change to the black box warning of the prescription drug label).

## III.   The Court Should Preclude Plaintiffs From Offering Testimony Or Argument That NPC Should Have Sent Dear Healthcare Provider Letters.

Dr. Blume opines that NPC should have sent DHCP letters concerning the changes she

proposed NPC should have made to the Tasigna® label.  Blume Report at ¶ 10.  A DHCP letter is

one of the mechanisms used to communicate important new information about a marketed

product.  *See* Johnston Decl., ¶ 16, Ex. 15 (January 2014 Guidance for Industry and FDA Staff re

"Dear Health Care Provider Letters: Improving Communication of Important Safety Information"

at 2).  The FDA guidance indicates that FDA must review a DHCP letter before it is sent out.  *See*

*id.* at 2-3 (discussing FDA consultation on the development of DHCP letters, including that "FDA

encourages manufacturers to consult with the appropriate review division . . . during the

development of a DHCP letter to ensure that the letter clearly and accurately reflects both the

manufacturer's and FDA's understanding of the issue and the action required.").

Because sending a DHCP letter cannot be done by a manufacturer unilaterally in the U.S.,

such an action must be precluded under the guidance of *Pom Wonderful* and *Mensing* as

discussed above.  Notably, in *Mensing*, a DHCP letter was one of the unilateral actions generic

providers were not permitted to make on their own.  *See Mensing*, 564 U.S. at 615.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

33022\6169899.2                    - 8 -                    NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
PREEMPTED LABELING ARGUMENTS -  Case No.
1:16-cv-00393-SEH

The fact that FDA has never required a DHCP letter for atherosclerotic events in the U.S. is clear evidence that FDA would not have approved a letter had NPC requested it.  At no point has the FDA asked NPC to issue a DHCP letter regarding atherosclerosis, nor did the FDA ever issue a safety announcement for Tasigna®, as it did for Iclusig®.  *See* Johnston Decl., ¶ 15, Ex. 14 (FDA Drug Safety Communication).  In fact, NPC asked FDA for guidance about whether a DHCP letter should be sent regarding the January 2014 label update, and FDA specifically clarified that a DHCP letter was not required for NPC's 2014 Tasigna® label updates.  *See* Johnston Decl., ¶ 17, Ex. 16 (Feb. 21, 2014 Email).  Given the clear authority of FDA on this issue, plaintiffs should be precluded from discussing evidence or argument concerning DHCP letters at trial.  This clear evidence is an additional ground for preemption under the Supreme Court's ruling in *Levine*, 555 U.S. at 571 (suggesting that "clear evidence that the FDA would not have approved a change to [the] label" is sufficient for impossibility preemption).  *See also In re Incretin-Based Therapies*, 142 F. Supp. 3d at 1123-24 (S.D. Cal. 2015) (failure to require a label change was "persuasive" evidence that "FDA would have rejected" the label change sought by plaintiffs); *Cerveny*, 155 F. Supp. 3d at 1219 (same).

///
///
///
///
///
///
///
///
///
///
///
///
///

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

33022\6169899.2

- 9 -

NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
PREEMPTED LABELING ARGUMENTS -  Case No.
1:16-cv-00393-SEH

1

## CONCLUSION

2      For the foregoing reasons, the Court should grant this motion and issue an order excluding

3  evidence and argument that NPC should have taken certain actions that require FDA pre-

4  approval.

5

Dated:  September 1, 2017                    Respectfully submitted,

6
                                             /s/ Sandra A. Edwards
7                                            James A. Bruen (State Bar No. 43880)
                                             (jbruen@fbm.com)
8                                            Sandra A. Edwards (State Bar No. 154578)
                                             (sedwards@fbm.com)
9                                               FARELLA BRAUN + MARTEL LLP
                                                235 Montgomery Street, 17th Floor
10                                              San Francisco, CA  94104
                                                Telephone:  (415) 954-4400
11                                              Facsimile:  (415) 954-4480

12                                           /s/ Robert E. Johnston
                                             Robert E. Johnston (admitted *pro hac vice*)
13                                           (rjohnston@hollingsworthllp.com)
                                             Andrew L. Reissaus (admitted *pro hac vice*)
14                                           (areissaus@hollingsworthllp.com)
                                                HOLLINGSWORTH LLP
15                                              1350 I Street, NW
                                                Washington, D.C. 20005
16                                              Telephone: (202) 898-5800
                                                Facsimile: (202) 682-1639
17
                                             *Attorneys for Defendant Novartis*
18                                           *Pharmaceuticals Corporation*

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

33022\6169899.2                        - 10 -                    NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
                                                                PREEMPTED LABELING ARGUMENTS -  Case No.
                                                                1:16-cv-00393-SEH

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2017, a true and copy of the foregoing was served upon the following by operation of the Court's Electronic Case Filing System

Richard M. Elias
Grey G. Gutzler
Tamara M. Spicer
ELIAS GUTZLER SPICER LLC
1924 Chouteau Ave., Suite W
St. Louis, MO 63103

*Counsel for Plaintiffs*

Julie Y. Park
juliepark@mofo.com
Grant Esposito
gesposito@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, CA 92130

*Counsel for Defendant Novartis AG*

/s/Sandra A. Edwards
James A. Bruen (State Bar No. 43880)
(jbruen@fbm.com)
Sandra A. Edwards (State Bar No. 154578)
(sedwards@fbm.com)
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

33022\6169899.2

- 11 -

NPC'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE
PREEMPTED LABELING ARGUMENTS -  Case No.
1:16-cv-00393-SEH